■ GRAND MANOR HEALTH RELATED FACILITY, Appellant-Respondent, v HAMILTON EQUITIES, INC., et al., Respondents-Appellants.—Judgment of the Supreme Court, Bronx County (Anthony J. Mercorella, J.), entered July 27, 1984, which established a formula for the annual base rent Grand Manor is to pay the defendant landlord, fixed the commencement date of the lease between the two parties as September 15, 1980, and awarded judgment in favor of the plaintiff on its counterclaim in the amount of $221,870, is unanimously modified, on the law and the facts, to the extent of fixing the daily rent payable as the Medicaid reimbursement rate for real property items for the facility multiplied by the total number of beds actually occupied on that day and fixing the annual rent as the total of all such daily rents, establishing the date of commencement of the lease as March 1, 1981, and increasing the damage award to a total sum of $337,370, and the judgment is otherwise affirmed, without costs and without disbursements.

This is an action for a declaratory judgment and monetary damages arising from a breach of contract in a landlord-tenant proceeding. Both parties appeal the judgment below. On July 30, 1974, defendant Hamilton Equities, Inc., and plaintiff Grand Manor entered into an agreement pursuant to which defendant was to construct and own a proposed 240-bed health related facility while plaintiff was to operate and lease the facility. An amendment to the lease agreement was drafted and executed on August 28, 1978, establishing that the monthly rental rate should be "a figure equal to 1/12th of the annual Medicaid reimbursement rate that shall, in fact, be computed in accordance with part 86-2.21 (e) of the Commissioner's Rules and Regulations of Medicaid reimbursement for 1978 or the Rules and Regulations applicable at the time of completion of construction".

The dispute between the parties centers on the interpretation of the term "annual Medicaid reimbursement rate," particularly, whether that rate is the medical reimbursement figure multiplied by 240 beds, then multiplied by 365 days, as defendant contends; or as plaintiff contends, the sum of all daily rents arrived at by multiplying the reimbursement rate by actual bed occupancy. Plaintiff's calculations would equal the amount by which the State would reimburse the facility. Some indication of the true intent of the parties in establishing the rent formula is the explicit recognition in the lease agreement that the rental rate would constantly be adjusted upwards or downwards, strongly suggesting that the rental rate was variable, tied to actual bed occupancy. Furthermore, the attorney jointly retained by both parties to draft the lease amendment and negotiate with the State testified that he had explained to the parties and it was their intent that the lease amendment would provide that defendant was to be paid rent based upon plaintiff's actual reimbursement from the State, which would fluctuate according to the number of occupied beds. This and other testimony by nursing home experts supplies overwhelming proof that the intent, purpose and effect of the lease amendment was the daily rent payable by plaintiff was the Medicaid reimbursement rate for real property items for the facility multiplied by the number of beds actually occupied on that day and that the annual rent was the total of all such daily rents for the year. The trial court erred, therefore, in declaring a formula which set the rent as the Medicaid reimbursement formula multiplied by the total 240 beds, whether occupied or not.

The trial court also erroneously set the date of commencement of the lease as September 15, 1980. The lease provided that the commencement date would be either (1) 30 days after the certificate of occupancy was issued authorizing use of the premises as a 240-bed health related facility, if there was also compliance with State architectural and engineering designs and the landlord had provided all required furnishings, or (2) the date on which plaintiff received a State license "to operate the facility as a 240 bed Health Related Facility." Although a temporary certificate of occupancy was obtained in April of 1980 it was invalid and improperly issued due to numerous violations of law in the construction of the facility. Consequently, it cannot be invoked to trigger the lease's commencement date.

However, plaintiff did receive a license from the New York State Department of Health to operate the facility as a 240-

bed facility on March 1, 1981. Before that, as early as September 1980, the State had authorized the use of some of the floors of the facility, but not until March 1, 1981, was approval finally given to operate the premises at its full 240-bed capacity. According to the lease's terms, then, the commencement date of the lease is March 1, 1981.

On the question of damages we note one obvious miscalculation. Included within the damage award was a total of $193,875 for defendant's installation of 165 unsuitable air conditioning units. The court mistakenly applied the figure of $1,175 as the per unit cost to replace the unsuitable units. Our review of the record indicates that the figure was actually $1,875 per unit. An additional $115,500 must, therefore, be awarded to plaintiff, increasing the damages award to a total of $337,370. Concur—Sullivan, J. P., Ross, Carro, Kassal and Ellerin, JJ.