GRAND MANOR HEALTH RELATED FACILITY, Appellant, v HAMILTON EQUITIES, INC., et al., Respondents.

First Department, May 25, 1989

## APPEARANCES OF COUNSEL

*Jeremy D. Morley* of counsel *(Ernest Holzberg,* attorney), for appellant.

*Stephen R. Sugrue* of counsel *(Lowenthal, Landau, Fischer & Ziegler, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

ASCH, J.

Plaintiff is the tenant operator of a health care facility, and

the defendant, the owner of real property. The parties entered into an agreement pursuant to which the defendant Hamilton was to construct and own the proposed 240-bed facility while plaintiff Grand Manor was to operate and lease it. A dispute developed between the parties, however, as to the proper method of calculating rent due under the lease, as well as to the date the lease actually "commenced". The plaintiff contended that the proper method of calculating the annual rent was to multiply the State Medicaid reimbursement rate by the number of beds actually occupied by patients in the facility. The defendants maintained that the State Medicaid reimbursement rate should be multiplied by the total beds in the facility regardless of actual occupancy.

The Supreme Court, in a prior order entered in 1984, agreed with defendants that reimbursement should be based upon the total bed capacity of the facility, not the actual occupancy. It also found for the plaintiff on its second cause of action which alleged the failure by defendants to provide and install certain capital items and other furnishings and fixtures required by the lease. It awarded some $221,870 as damages for these items. Further, the court found the lease commencement date to be September 15, 1980. Finally, it declared that the tenant had defaulted in the payment of rent and in the amounts designated as additional rent and directed an assessment by a judicial hearing officer which "should include the determination of the amount of the annual rental outstanding and the determination of the amount of additional rent due which represents the moneys paid by the landlord for the tenant pursuant to the lease and the previous stipulation of the parties in the Landlord and Tenant Proceeding. The period of time to be considered is the whole period of the landlord-tenant relationship dating from September 15, 1980 to the date of the assessment. The assessment shall also consist of a full accounting of the parties as requested by the landlord as an amendment to its counterclaim in the declaratory judgment action which was granted during trial. This full accounting shall consist of the accrued amounts of annual rental and the amounts designated as additional rents while giving credit to the tenant for moneys it paid to third parties, the mortgagee and the landlord during the landlord-tenant relationship."

Upon appeal to this court (114 AD2d 776), we modified this nisi prius order to declare the lease commencement date to be March 1, 1981. Further, we found the annual rent to be paid by the plaintiff was to be determined by multiplying the

Medicaid reimbursement rate for real property items for the facility by the total number of beds *actually* occupied, not the total capacity of the facility. Finally, noting an arithmetical error, we increased the damage award in plaintiff's second cause of action from $221,870 to $337,370, and otherwise affirmed without costs and without disbursements. We did not expand the scope of the assessment beyond the determination of the rent and additional rent owed under the lease. (In fact, the assessment is not expressly mentioned in our order and decision.)

In spite of the limited scope of the assessment fixed by this court, after hearing, the Judicial Hearing Officer recommended an award to the plaintiff of rent and additional rent for $275,259; interest on rent and additional rent at statutory rate $92,268; damages on the second counterclaim as determined by the Appellate Division $337,370; interest on this damage award from July 1, 1980 at 1% above prime rate $293,955; attorney's fees to plaintiff's attorney $650,000; trial expenses and disbursements $31,555.

Plaintiff moved to confirm this report but the IAS court, in the order appealed from, rejected the recommendation by the Judicial Hearing Officer that the judgment for damages should be entered in the amount determined by us plus interest at 1% over prime, as outside the scope of the referral. Also rejected as being outside the scope of the referral were the Judicial Hearing Officer's recommendations as to the award of attorney's fees and litigation expenses.

The IAS court also rejected the Judicial Hearing Officer's finding on rent due and found the appropriate rates should be calculated by adjusting the Medicaid real property reimbursement rate, leaving "net rate" figures as set forth in exhibit 1, schedule A, column 5, submitted by plaintiff at the hearing, and incorporated by the court in the final judgment. The court also found that the items of "additional rent" were limited to real estate taxes, water charges, sewer rents and assessments reasonably estimated for the ensuing year, as provided by the lease, and that interest was to be paid on those amounts at the statutory rate. Thus, the judgment entered granted plaintiff the sum of $42,330 as the total amount for rent and additional rent.

The IAS court was correct in its rejection of the Judicial Hearing Officer's award of interest on the damage award at 1% over the prime rate. The damage calculation made by the

Supreme Court in the prior order, and modified by us, was *not* within the scope of the reference. Further, plaintiff made section 10.1 of the lease its basis for an award of interest on the damage claim, at the reference. However, it never asserted in its pleadings, at the trial, or to this court on the prior appeal, any claim under section 10.1 of the lease. Finally, section 10.1 provides, *inter alia:* "Should Lessor fail to perform any of its covenants * * * Lessee may, at its expense, upon at least five (5) days prior written notice to Lessor, perform such covenants, and all sums so expended by Lessee therein shall be immediately payable by Lessor to Lessee with interest thereon at the rate of 1% over prime per annum * * * and in addition, Lessor shall reimburse Lessee for Lessee's reasonable expenses, if Lessee shall prevail in enforcing or performing such covenants, including reasonable attorneys' fees".

Thus, plaintiff must demand that defendants cure a "breach" and there must thereafter be an expenditure by plaintiff to cure the breach itself. There is no showing in the record here of any such demand or expenditure by plaintiff. Consequently, plaintiff is not entitled to interest at 1% over prime, but solely the statutory interest provided for under the CPLR.

The IAS court was also correct in excluding litigation expenses and attorneys' fees. The same reasons which preclude an award of contractual interest under section 10.1 of the lease also prohibit an award of attorney's fees and litigation expenses. Thus, plaintiff never previously asserted its entitlement or claim to such fees. Further, any such claim was outside the scope of the reference, and the language of section 10.1 does not apply since there was no demand or expenditure by plaintiff to cure the breach.

Finally, the IAS court properly rejected the recommendation of $275,259 set by the Judicial Hearing Officer for the total rent and additional rent due through December 1985 and, instead, set it at $42,330. At the assessment; plaintiff submitted a schedule indicating that $135,077 was owed to it as overpaid rent and additional rent. The parties agreed at the hearing, however, that there should be two adjustments to that figure, a credit to defendants of $120,000 and a credit of $27,253 to plaintiff, leaving a claimed overpayment of $42,330.

Plaintiff's counsel stipulated that this was the correct amount, as set forth in the figures in exhibit 1, schedule A,

column 5, which were used by the IAS court in the final judgment. These figures were furnished by the plaintiff and sworn to by its accountant, Mr. Luisi. When plaintiff's second witness, Mr. Newman, testified the analysis complied with our prior order on payment of the Medicaid reimbursement rate for real property items except in "one aspect, the area of movable equipment", the plaintiff then changed its position at the assessment, seeking yet *another* reduction for personalty from the combined rate which was granted by the Judicial Hearing Officer to arrive at the rate for real property items. However, as exhibit 1 shows, plaintiff had submitted the "Medicaid Real Property Per Diem Rate" with the adjustments for personalty already made.

Pursuant to the lease agreement, the defendants furnished not only the real property, but also capital items and other furnishings and fixtures. In fact, that was the basis for the award of damages on plaintiff's second cause of action, i.e., failure by defendants to provide such furnishings and fixtures. Accordingly, plaintiff was obligated to pay as rent an amount which would cover real property and the furnishings and fixtures supplied by defendants. Thus, the adjustments made to the real property reimbursement rate for movables *supplied by the plaintiff* were the only correct adjustments to the "Medicaid Real Property Per Diem Rate". Mr. Newman's testimony at the assessment improperly led the Judicial Hearing Officer to make a second reduction from the real property reimbursement rate for movables, not justified by the lease terms, the parties' prior agreement at the trial and appeal and, indeed, inconsistent with plaintiff's initial position at the assessment.

The figures in exhibit 1 were used by plaintiff in the trial and the prior appeal, and we adopted the terminology in our prior decision in awarding the reimbursement rate for real property items. Consequently, the IAS court was correct in using these figures and the Judicial Hearing Officer in error in allowing an inconsistent accounting formula.

Accordingly, the order of the Supreme Court, Bronx County (Hansel McGee, J.), entered May 3, 1988, which, *inter alia,* awarded plaintiff Grand Manor Health Related Facility $42,330 plus statutory interest for rent and additional rent overpayments and $337,370 for damages plus statutory interest, should be affirmed, without costs or disbursements.

SULLIVAN, J. P., MILONAS, ROSENBERGER and WALLACH, JJ., concur.

Order, Supreme Court, Bronx County, entered on May 3, 1988, unanimously affirmed, without costs and without disbursements.